BULLION et al., Appellants and Cross–Appellees,

v.

GAHM et al., Appellees and Cross–Appellants.

[Cite as *Bullion v. Gahm,* 164 Ohio App.3d 344, 2005-Ohio-5966.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 05CA2995.

Decided Nov. 2, 2005.

R. Tracy Hoover and Marie Moraleja Hoover, for appellants and cross-appellees.

T. Kevin Blume and Steven L. Mowery, for appellees and cross-appellants.

---

HARSHA, Judge.

{¶ 1} The Bullions and Gahms, who are owners of adjacent property in rural Scioto County, became involved in a legal dispute over the ownership of a small tract of land that adjoins their parcels. The Bullions claimed the property by adverse possession, while the Gahms claimed that the tract lay within their deed's description. The trial court decided that the Bullions had established adverse possession, but only to a part of the tract. The Bullions appealed, arguing that the evidence established their right to the entire 3.248 acre tract. The Gahms cross-appealed and argue that the evidence does not support the Bullions' claim to any of the tract.

{¶ 2} Because some competent, credible evidence supports the trial court's conclusion that the Bullions established their claim of adverse possession to only a part of the acreage, we reject both the appeal and cross-appeal. Accordingly, we affirm the trial court's judgment.

## I. History of the Tract

{¶ 3} On February 13, 1952, Eva Morris purchased property in Scioto County's Valley Township. Sometime between 1970 and 1972, Phillip Day, Morris's husband, made a boundary line on the east side of what he believed to be his property. This boundary line encompassed the disputed tract. Day placed wooden fence posts in the ground, but did not connect the fence in any way. Day then grew corn on the disputed tract for three years, and after that, he maintained the fence posts and kept the tract clean. On February 27, 1981, Day and his wife sold the property to Norman Lounds. Lounds raised potatoes on a portion of the tract and kept the tract clean up to the line of fence posts. He also cut weeds and hired another man to clear brush from the tract.

{¶ 4} Lounds then sold the property to Steve Sherman on June 29, 1983. Sherman's wife lived on the property alone for a four-month period starting from the time Sherman purchased the property until the two were married. During this four-month period, Mrs. Sherman worked on cleaning the land, including the disputed tract, but she did not farm or use the disputed tract for pasture. Then, after four months had passed, Sherman put barbed wire around the perimeter, raised cattle on the disputed tract for at least three of the six years he owned it, and placed a garden there. Sherman also installed a gate in the fence. Accord-

ing to Sherman, Mr. Moulton, the predecessor in title to the Gahms, was happy that the gate had been installed and never objected to the gate or fence.

{¶ 5} Sherman believed that the disputed tract belonged to him by virtue of his deed. Lounds told Sherman when Sherman purchased the property that it extended to the fence, which now included the disputed tract. Sherman installed a satellite dish on the disputed tract and limed and seeded the land to create a pasture for his cattle. Sherman used the disputed tract of land until he sold the property to the Bullions on September 22, 1989.

{¶ 6} The Bullions stated that the fence that Sherman built still existed when they purchased the property. The Bullions believed that this fence represented the boundary line of their property, making the disputed tract a part of the property they had purchased from Sherman. The Bullions utilized the disputed tract by planting new grass, planting over 200 trees on the tract, using the tract as pasture for their horses, and using the tract for various recreational activities.

{¶ 7} The Bullions subsequently learned that the Gahms had purchased an adjacent parcel of land from the Moulton family. The Gahms had a survey conducted and informed the Bullions that the disputed 3.248 acre tract of land was included in the Gahms' deed.

{¶ 8} The Bullions then filed a complaint against the Gahms on August 7, 2003, to quiet title to the disputed 3.248 acre tract of land, asserting that the Bullions had acquired title through adverse possession.

{¶ 9} The west side of the disputed tract is located in Valley Township, because the east side is located in Jefferson Township, as the township line bisects the tract. The Bullions' deed states that the Bullions own land located only in Valley Township, and the Gahms' deed states that the Gahms own land located in both townships. Both parties agree that the disputed tract is contained within the Gahms' deed and not the Bullions' deed.

{¶ 10} At trial, the court heard conflicting testimony from a number of witnesses about how the disputed tract was used and by whom during the statutory period for adverse possession. The trial court issued a decision that concluded that the Bullions had established title through adverse possession to the northern part of the disputed tract located in Valley Township, but had not established title to the southern part of the tract, including all land located in Jefferson Township and some land located in Valley Township.

## II. The Gahms' Cross–Appeal

{¶ 11} We will begin our discussion with an analysis of the Gahms' cross-appeal, which raises two assignments of error:

I. The trial court erred in finding that Plaintiffs had established the elements of adverse possession to a portion of the disputed 3.248 acre parcel.

II. The trial court erred in tacking the possession of Norman Lounds to Plaintiff's possession and the possession of Plaintiff's predecessor in title, Sherman, in order to establish twenty-one years of possession.

{¶ 12} The Gahms contend that the trial court erred in finding that the Bullions had established the elements of adverse possession to a portion of the disputed tract. Our analysis of this general contention includes their specific assertion that the trial court erred in tacking the possession of the Bullions and their predecessors in interest.

## A. Elements of Adverse Possession

{¶ 13} In order to establish title to land by adverse possession, possession must be exclusive, open, notorious, continuous, and adverse for a period of 21 years. *Grace v. Koch* (1998), 81 Ohio St.3d 577, 692 N.E.2d 1009, at the syllabus. It "is the visible and adverse possession with an intent to possess that constitutes [the occupancy's] adverse character." *Humphries v. Huffman* (1878), 33 Ohio St. 395, 402. The occupancy "must be such as to give notice to the real owner of the extent of the adverse claim." Id. at 404. Each case of adverse possession rests on its peculiar facts. *Oeltjen v. Akron Associated Invest. Co.* (1958), 106 Ohio App. 128, 130, 6 O.O.2d 399, 153 N.E.2d 715.

## B. Standard of Review

{¶ 14} An appellate court will not reverse the decision of a trial court as being against the manifest weight of the evidence if the decision of the trial court is supported by any competent, credible evidence as to all essential elements of a case. *State ex. rel. Pizza v. Strope* (1990), 54 Ohio St.3d 41, 46, 560 N.E.2d 765. This standard is highly deferential and "some" evidence is enough to prevent a reversal if it applies to all the essential elements of a case. *McCoy v. McCoy* (1995), 105 Ohio App.3d 651, 656, 664 N.E.2d 1012.

## C. Evidence of Adverse Possession

{¶ 15} The record contains evidence that the Bullions and their predecessors in title utilized the disputed tract in an open and notorious manner. The Bullions and their predecessors in title cleared and maintained the tract, farmed the tract, and installed two different satellite dishes, and the Bullions used the tract for various recreational activities. Furthermore, Day erected fence posts between 1970 and 1972, and the fence built on that line remains as a boundary line between the properties. The Bullions' predecessors also used the tract as a pasture for cattle.

{¶ 16} The record indicates that the Bullions and their predecessors in title had exclusive use of the property that the court awarded them. No one else has used the disputed tract. There is no evidence that the Gahms or any of their predecessors in title used the disputed tract within the last 21 years.

{¶ 17} The record also establishes that the Bullions' possession of the disputed tract was adverse and hostile to the Gahms' title. The Bullions and their predecessors in title never received permission to use the disputed tract, and they believed that the disputed tract belonged to them. The Bullions and their predecessors in title also constructed and maintained a boundary fence that encompassed the disputed tract, an action that is consistent with their claim of ownership. See *Cent. Baptist Church v. Bowles* (1997), Scioto App. No. 96CA2451, 1997 WL 570880, citing *Engle v. Beatty* (1931), 41 Ohio App. 477, 180 N.E. 269 (a fence can be strong evidence of ownership). The Bullions and each of their predecessors in title used the disputed tract as if it were their own. They each maintained the tract and used it in a variety of ways just as its true owner would have used it. "[T]he use of land requisite to adverse possession is such use as would be made of that land by the owner." See *Vanasdal v. Brinker* (1985), 27 Ohio App.3d 298, 299, 27 OBR 343, 500 N.E.2d 876.

{¶ 18} Finally, the Bullions and their predecessors in title used at least parts of the disputed tract continuously for the entire 21–year statutory period. The Bullions filed their complaint on August 7, 2003, so they had to establish the continuous nature of adverse use back to at least a period of 21 years, i.e., to August 7, 1982. At that time, Lounds owned the property. Moreover, the Bullions presented evidence of use back to the 1970s, beginning with Phillip Day.

{¶ 19} The Gahms argue that the trial court erred in tacking the possession of the Bullions' predecessors in title.

"The doctrine of tacking the possession of successive owners has been definitely adopted in Ohio; that is, where the adverse possession of successive owners, between whom privity exists, equals or exceeds the statutory period of 21 years, the occupations may be united or tacked to each other to make up the time of adverse holding sufficient to ripen into title * * *. All that is generally necessary to privity between successive occupants of property is that one receive his possession from the other by some act of such other or by operation of law * * *. [T]he possessory interest of an adverse claimant who has not yet acquired title passes to his successor or transferee by inheritance, will, deed, or by mere agreement whether written or verbal * * *. Successive possessions may be tacked although the land, title to which is claimed by adverse possession, is not included in the description in the deed of adjoining land to the party in possession."

*Keezer v. Deatrick* (1988), Paulding App. No. 11–87–8, 1988 WL 126760, quoting 2 Ohio Jur.3d 525, et seq., Adverse Possession, Section 26 et seq. Each of the Bullions' predecessors in title acquired the property by deed, which is a proper way to establish privity. Even though the disputed tract was not mentioned in these deeds, the possessory interests may still be tacked. Id. at 4. Therefore, the Bullions and their predecessors in title are entitled to tack their successive possessions together to reach the 21–year statutory period if the possessions are continuous.

{¶ 20} The Gahms argue that the four-month gap in time from when Lounds sold the property to Sherman and when Sherman actually began using the disputed tract as pasture destroys the Bullions' continuous possession. In order for use to be continuous, there must not be substantial interruption, "with daily or weekly use generally not being required as long as the use is continuous enough to indicate prolonged and substantial use." *Ault v. Prairie Farmers Co-Operative Co.* (1981), Wood App. No. WD–81–21, 1981 WL 5788, citing *Kunkel v. Ulm* (1930), 9 Ohio Law Abs. 232. Here, Sherman purchased the property and allowed his future wife to live there for four months until the two were married, at which time Sherman moved in with her. During this four-month period, Sherman's wife began cleaning the property, but did not use it for pasture. Once they were married and the four months had passed, Sherman repaired the fence and used the disputed tract as pasture for his calves. The trial court properly concluded that this four-month period did not destroy continuity because it was "continuous enough to indicate prolonged and substantial use." Id.

{¶ 21} Therefore, we conclude that there is some competent, credible evidence to support the trial court's finding that the Bullions established each element of adverse possession on at least a portion of the property.

### III. The Bullions' Claim to the Entire Tract

{¶ 22} Next, we address the Bullions' sole assignment of error, in which they assert that the trial court erred in granting them title to only a portion of the disputed tract. The Bullions contend that they established title to the entire tract, and thus the judgment was against the manifest weight of the evidence.

{¶ 23} The record contains some competent, credible evidence upon which the trial court could have concluded that the Bullions acquired title by adverse possession to only a portion of the property. At first blush, it seems illogical in light of the established perimeter line for the entire tract that the court would sever a portion of it from the award. However, logic and the law also tell us that one could not place a perimeter line around a 100–acre tract, consistently use only one acre of it, and still claim title to the entire parcel. Here, the trial judge visited the disputed tract on at least one occasion and

noticed certain physical features on the tract, such as natural drainage that seemed to divide the property into used and less-used sections. The trial court also paid particular attention to the dense growth of brush and trees in the area where he found that the Bullions had failed to establish their claim. The trial judge asked each party's witnesses a number of questions about the tract. Furthermore, witnesses for both parties gave conflicting testimony concerning the extent of use of different areas located within the disputed tract. Based on all these factors combined, we believe that the trial court had a rational basis for concluding that the Bullions had established adverse possession to only a portion of the disputed tract and will not second guess that factual determination.

{¶ 24} Furthermore, the Bullions did not request findings of fact and conclusions of law. Civ.R. 52 states that a trial court's judgment may be general, absent such a request. When a party fails to request findings of fact and conclusions of law, the reviewing court must presume that the trial court applied the law correctly and must affirm if there is some evidence to support the judgment. See *Allstate Fin. Corp. v. Westfield Serv. Mgt. Co.* (1989), 62 Ohio App.3d 657, 577 N.E.2d 383. In *Pettet v. Pettet* (1988), 55 Ohio App.3d 128, 130, 562 N.E.2d 929, the court wrote:

> We conclude that when separate facts are not requested by counsel and/or supplied by the court the challenger is not entitled to be elevated to a position superior to that he would have enjoyed had he made his request. Thus, if from an examination of the record as a whole in the trial court there is some evidence from which the court could have reached the ultimate conclusions of fact which are consistent with his judgment the appellate court is bound to affirm on the weight and sufficiency of the evidence.

> The message should be clear: If a party wishes to challenge the * * * judgment as being against the manifest weight of the evidence he had best secure separate findings of fact and conclusions of law. Otherwise his already "uphill" burden of demonstrating error becomes an almost insurmountable "mountain."

See, also, *Internatl. Converter, Inc. v. Ohio Valley Converting, Ltd.* (May 26, 1995), Washington App. No. 93CA34, 1995 WL 329571.

{¶ 25} Therefore, we conclude that the trial court's decision to grant the Bullions title to only a portion of the disputed tract is not against the manifest weight of the evidence.

Judgment affirmed.

ABELE, P.J., and KLINE, J., concur.