DECISION AND JUDGMENT ENTRY
{¶ 1} John E. Jordan, the Decedent, attempted to execute a will that left his entire estate to his granddaughter, Erica Jordan. He had a notary at his church write out his will for him, and he signed it in the presence of the notary and a friend. However, neither the notary nor the friend signed the will as witnesses. Erica Jordan sought to probate this will under R.C. 2107.24, which allows wills that do not otherwise comply with the statutory formalities of R.C. 2107.03 to be admitted to probate if there is clear and convincing evidence that the decedent caused a document to be prepared, that he intended it to be a will, and that two or more witnesses saw the decedent sign it. The trial court concluded that the elements of R.C. 2107.24 were satisfied, and it admitted the will to probate.
 {¶ 2} Appellant John D. Jordan, the Decedent's son, argues that the trial court's judgment is against the manifest weight of the evidence because the witnesses who testified that they saw the Decedent sign the will were not credible. We presume that the trial court's findings are correct and will not reverse the trial court's decision if it is *Page 2 
supported by some competent, credible evidence. Because the witnesses testified that they saw the Decedent sign the document that he intended to be his will, and because we leave credibility determinations to the trial court, we cannot say that the decision to probate the will is against the manifest weight of the evidence. Accordingly, we affirm the judgment below.
 I. Facts {¶ 3} On November 27, 2006, John E. Jordan (Mr. Jordan) brought his friend Jack Armstrong with him to the Christ United Methodist Church in Jackson, Ohio, where Mr. Jordan worshiped. Mr. Jordan and Armstrong went to the church office and met Kathy McPherson, the church secretary. Mr. Jordan dictated his will to McPherson in the following language:
 November 27, 2006
 I, John E. Jordan, on this date I will everything: properties, monies to granddaughter Erica K. Jordan.
Mr. Jordan signed his name, and McPherson added the following language below the signature: "Signed before me in my presence in Jackson County this 27th day of November, 2006." McPherson then affixed her notary stamp and seal, but neither she nor Armstrong signed the document as required by R.C. 2107.03.
 {¶ 4} John E. Jordan died on August 1, 2007 and John D. Jordan, the Decedent's son and his sole heir under the law of intestacy, applied to administer the estate. Erica Jordan, the Decedent's granddaughter and the sole beneficiary of the purported will, applied to probate Mr. Jordan's will. *Page 3 
 {¶ 5} The trial court held a hearing to determine whether the "harmless error in will execution" provisions of R.C. 2107.24(A) applied in this case. At that time, R.C. 2107.24(A) provided:[1]
 If a document that is executed that purports to be a will is not executed in compliance with the requirements of section 2107.03 of the Revised Code, that document shall be treated as if it had been executed as a will in compliance with the requirements of that section if a probate court, after holding a hearing, finds that the proponent of the document as a purported will has established, by clear and convincing evidence, all of the following:
 (1) The decedent prepared the document or caused the document to be prepared.
 (2) The decedent signed the document and intended the document to constitute the decedent's will.
 (3) Two or more witnesses saw the decedent sign the document under division (A)(2) of this
section.
McPherson and Armstrong both testified at the hearing required by the statute. McPherson testified that she knew Mr. Jordan as member of the church congregation and that he would stop in regularly to see her at the church office. According to McPherson, Mr. Jordan came to her office and asked her to "write down his wishes." She then identified the purported will as the document that she had written out for Mr. Jordan, and she testified that she saw him sign it. McPherson also testified that Armstrong was in the room when Mr. Jordan dictated his will and signed it, and it was her belief that Armstrong was "probably watching," although she could not say for sure. She also indicated there was only that one document dictated and signed by Mr. Jordan that day. On cross-examination, John D. Jordan's attorney asked McPherson about her prior deposition testimony that she had never failed to sign a document that she had *Page 4 
notarized and emphasized that, even though she had placed her notary seal on the Decedent's will, she had failed to sign it.
 {¶ 6} Armstrong testified that he went with Mr. Jordan to his church because Mr. Jordan "wanted to sign a Will." He indicated that he went with Mr. Jordan to his church on only one occasion and that while there he witnessed a lady write something down and Mr. Jordan sign it. However, Armstrong explained that he would not be able to recognize what it was Mr. Jordan signed because he was "not a good reader." On cross-examination, counsel asked Armstrong whether he had witnessed Mr. Jordan sign the will, and Armstrong replied that "I thought he did." Counsel also asked Armstrong about his deposition testimony, in which he stated that he did not see Mr. Jordan sign this piece of paper. And counsel asked Armstrong if Erica Jordan's attorney had told him he would have to say that Mr. Jordan signed this paper; Armstrong answered that he did. However, on re-direct, Erica Jordan's attorney asked what he had told Armstrong to say, and Armstrong replied that "you told me to tell the truth." Armstrong was not sure what Mr. Jordan signed because he was "not a good reader," but he saw him sign something.
 {¶ 7} The trial court found that Erica Jordan had produced clear and convincing evidence that Mr. Jordan caused the will to be prepared, that he intended it to be a will, and that two witnesses saw him sign it.
 {¶ 8} John D. Jordan filed this appeal, presenting one assignment of error: "The trial court erred by finding that two witnesses saw the Decedent sign the alleged will, and therefore, erred by admitting said will to probate." *Page 5 
 II. Standard of Review {¶ 9} John D. Jordan asserts that the finding that two witnesses saw the Decedent sign the will is against the manifest weight of the evidence because it is not supported by clear and convincing evidence. "Clear and convincing evidence" is evidence that will provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. State v. Eppinger, 91 Ohio St.3d 158, 164,2001-Ohio-247, 743 N.E.2d 881; State v. Schiebel(1990),55 Ohio St.3d 71, 74, 564 N.E.2d 54. It is considered a higher degree of proof than a mere "preponderance of the evidence," the standard generally utilized in civil cases, but it is less stringent than the "beyond a reasonable doubt" standard used in criminal trials. The standard of review for weight of the evidence issues, even where the burden of proof is "clear and convincing," retains its focus upon the existence of "some competent, credible evidence." Schiebel, 55 Ohio St.3d at 74. We will not reverse a trial court's decision as being against the manifest weight of the evidence if some competent, credible evidence supports it.C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,8 O.O.3d 261, 376 N.E.2d 578, syllabus. This standard of review is highly deferential and "some" evidence is sufficient to sustain the judgment and prevent a reversal. Jones v. Jones, Athens App. 07CA25,2008-Ohio-2476, at ¶ 18; Bullion v. Gahm, 164 Ohio App.3d 344,2005-Ohio-5966, 842 N.E.2d 540, at ¶ 14. This is true even where the burden of proof at trial is more than a preponderance and must satisfy the "clear and convincing" standard. Jones at ¶ 22; Bullion at ¶ 14. Moreover, we presume that the trial court's findings are correct because the trial court is best able to view the witnesses and observe their demeanor, gestures, and voice inflections and to use those observations *Page 6 
in weighing the credibility of the testimony. Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273; Jones at ¶ 18.
 III. The Manifest Weight of the Evidence {¶ 10} John D. Jordan argues that "it does not make sense" that Mr. Jordan would go to his church to execute a will when he had already retained an attorney to probate the estate of his wife, who had recently died. However, Erica Jordan's attorney, who had also represented the wife's estate, represented to the court that Mr. Jordan was having a hard time paying the legal fees for his wife's estate and that that was why he drafted his own will. In any case, John D. Jordan has not assigned as error the trial court's factual finding that Mr. Jordan intended the document to be a will.
 {¶ 11} Next, John D. Jordan argues that the testimony of McPherson and Armstrong was not credible. In particular, he relies on McPherson's deposition testimony that she always signed the documents that she notarizes when she did not, in fact, sign the Decedent's will. He notes that, even though she had dictated the document, she did not believe it was a will. He also relies upon the apparent confusion that Armstrong displayed as he testified regarding whether or not he had seen Mr. Jordan sign the will. At trial, John D. Jordan suggested that Armstrong had not seen the will prior to Mr. Jordan's death, and Armstrong testified inconsistently on cross-examination that he saw the Decedent sign the will, that he thought he saw the Decedent sign the will, and that he did not see the Decedent sign the will.[2] *Page 7 
 {¶ 12} However, we leave questions of the credibility and weight of the evidence to the trier of fact. Jones v. McAlarney Pools, Spas Billiards, Inc., Washington App. No. 07CA34, 2008-Ohio-1365, at ¶ 15;Cole v. Complete Auto Transit, Inc. (1997), 119 Ohio App.3d 771, 777-78,696 N.E.2d 289. Again, the rationale for deferring to the trier of fact on these issues is that the trier of fact is best situated to view the witnesses and their demeanor, gestures and voice inflections and to use those observations to weigh credibility. Myers v. Garson (1993),66 Ohio St.3d 610, 615, 614 N.E.2d 742; Seasons Coal Co., 10 Ohio St.3d at 80. Based on these observations, the trier of fact may choose to believe all, part, or none of the testimony of any witness. Jones at ¶ 15, citing Rogers v. Hill (1998), 124 Ohio App.3d 468, 470, 706 N.E.2d 438
and Stewart v. B.F. Goodrich Co. (1993), 89 Ohio App.3d 35, 42,623 N.E.2d 591. For this reason, in applying the "some competent credible evidence" standard, "[the appellate court's] role is simply to insure the decision is based upon reason and fact. We do not second guess a decision that has some basis in these two factors, even if we might see matters differently. Rather, we must defer to the trier of fact in that situation." Orebaugh v. Am. Family Ins., Highland App. No. 06CA11,2007-Ohio-3891, at ¶ 21.
 {¶ 13} Here, the trial court appears to have concluded, based upon its observations of Armstrong testifying at trial, that Armstrong was truthful in his statements that he went with the Decedent to the church so that the Decedent could sign a will and that he saw the Decedent sign the will, as well as that Armstrong's confusion caused his inconsistent testimony. We presume that the trial court's findings *Page 8 
are correct because the trial court had the benefit of observing the witnesses' testimony. Seasons Coal Co., 10 Ohio St.3d at 80;Jones at ¶ 18.
 {¶ 14} We believe that some credible, competent evidence supports the trial court's finding that two witnesses saw Mr. Jordan sign the document purporting to be a will. Armstrong testified that Mr. Jordan brought him to the church for the purpose of making a will and that he saw Mr. Jordan sign a paper that he believed was his will. He also testified that this was the only occasion that he had gone to the church with Mr. Jordan. McPherson identified the purported will as the document that she prepared at Mr. Jordan's direction and that she saw him sign it. She also testified that Armstrong was present and that she believed that he saw Mr. Jordan sign the will as well. McPherson testified that the will was the only document that she prepared that day. Accordingly, the judgment is supported by the manifest weight of the evidence.
 {¶ 15} Having concluded that some competent, credible evidence supports the judgment below, we cannot say that it is against the manifest weight of the evidence. For this reason, we affirm the judgment below.
 JUDGMENT AFFIRMED. *Page 9 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court, Probate Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J.: Concurs in Judgment and Opinion. McFarland, J.: Dissents.
[1] The General Assembly subsequently amended R.C. 2107.24(A).
[2] John D. Jordan also relies on McPherson's deposition testimony in which, when asked whether anyone else was with her and Mr. Jordan when he dictated the will, she responded "No. Oh, Jack [Armstrong] was in the room." John D. Jordan argues that "she suddenly remembered not only that there was another person in the room, but she remembered Jack's name." However, John D. Jordan did not impeach McPherson with this testimony at the hearing. In any case McPherson clarified that Armstrong, whom she identified as "the man who is out here waiting" for his turn to be deposed was the man who came with the Decedent to her office. She had been waiting with Armstrong to be deposed for about an hour, but she testified that they had never spoken about the will. *Page 1