[Cite as *Marcum v. Ellis*, 2020-Ohio-2763.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

| | |
|---|---|
| Bryan Marcum, et al. | Court of Appeals No. H-19-008 |
| Appellants | Trial Court No. CVH 2016 1169 |
| v. | |
| James Ellis, et al. | **DECISION AND JUDGMENT** |
| Appellees | Decided: May 1, 2020 |

* * * * *

Kyle R. Wright and Zachary E. Dusza, for appellants.

Michael R. Nakon, Philip J. Truax and Ryan J. Garman,
for appellees.

* * * * *

**SINGER, J.**

{¶ 1} Appellants, Bryan Marcum, his wife Cynthia, and Bryan's parents, John and
Sally Marcum ("the Marcums) are appealing the April 17, 2019 judgment of the Huron
County Court of Common Pleas, which denied in part, and granted in part their motion
for summary judgment. The trial court found that appellees, James and Linda Ellis ("the

Ellises") had taken adverse possession of a portion of a disputed easement shared between the parties.

{¶ 2} Based upon our review, we find that the trial court did not err in granting summary judgment to the Ellises finding no genuine of material fact that the Ellises adversely possessed: (1) that portion of the easement where their garage lies and (2) the area referred to in the trial court's opinion as the "triangular" portion of the driveway.

## Background

{¶ 3} The Marcums and the Ellises are neighbors in Norwalk, Ohio. In 1966, John and Sally Marcum purchased the home they live in today. Harry Liebhart, the prior owner of the Ellises' property, also owned the easement area in question. Liebhart granted John and Sally Marcum a 16-foot easement for ingress and egress onto their property and divided the costs of the maintenance of the easement evenly between Liebhart and John and Sally Marcum.

## A. The Easement at Issue

{¶ 4} In 1969, the easement was again deeded by Liebhart to the Marcums. However, this version of the deed granted John and Sally Marcum a 20-foot easement *and* required those owners relying on the easement, to maintain the easement at their own costs. The easement was expressly granted and recorded with the deeds of the properties.

{¶ 5} At the time that John and Sally Marcum purchased their property in 1966, there was a 16-foot asphalt roadway in place, and the asphalt path remains in place today. The roadway was, in part, supported by a concrete retaining wall located on the east side

2.

of the roadway. The retaining wall lies on the same side of the roadway as all of the parties' properties. The Ellises purchased their property in 1978, while Bryan and Cynthia purchased their property in 1986.

{¶ 6} The Ellises' property lies at the intersection of the easement and State Route 61. The easement services the Marcums' properties, in addition to James and Sandra Reineck's properties.[1] The easement also originally granted John and Sally Marcum, their heirs, successors and assigns a right-of-way over the easement, the right to construct maintain and operate a roadway, the right to install pipes for water, sewer, or gas, and install telephone wires. All of the Marcums require use of the easement to access their respective properties.

## B. The Ellises' Construction on the Easement

{¶ 7} Sometime around 1990, James Ellis constructed a two-car garage without conducting a survey. Ellis was under the mistaken belief that the easement was only 16-feet wide, not 20-feet wide. The Ellises' garage and its overhang encroaches on the easement that was granted to the Marcums by approximately one foot.

{¶ 8} In 1993, James Ellis extended the retaining wall to a telephone pole located along the asphalt path. Also at this time, the Ellises added a brick façade to the retaining wall and added a decorative fence onto the top of the wall. During this process, the Ellises reinforced and strengthened the retaining wall.

---

[1] The Reinecks were named as interested parties below, but have not joined this appeal.

3.

{¶ 9} In 2014, the Ellises replaced the driveway in front of their garage and extended the retaining wall a second time, an additional four feet, so that it nearly reached State Route 61. The excavation and replacement of the driveway created a "shelf" from the difference in grading between the new driveway and the asphalt path. At this time, the Ellises also added a catch basin to the same area to help with water runoff, which they claimed was caused from the deterioration of the asphalt path.

{¶ 10} In total, there is an area of the easement of about 500 square feet that has been encroached upon by the Ellises. That encroachment starts to the south with the garage that overhangs the easement a little more than one foot. A triangle shaped area of the encroachment grows to more than three feet wide as the retaining wall approaches State Route 61. This greatly narrowed the entrance to the easement which the Marcums use to access their property.

{¶ 11} The Marcums admit that they believed the garage was encroaching on the easement when the garage was built in 1990, but state that they did not complain to Ellises out of neighborly accommodation. It was not until 2014, when the Ellises made the additional changes to the driveway and extended the retaining wall for the second time, that the parties also began to dispute where the easement was.

{¶ 12} The same year, the parties also began to argue about the deterioration of the asphalt path, and who bore responsibility to repair the path. During these disputes, James Ellis blocked the easement with his truck so that the other parties were not able to have their garbage picked up for several days. He installed a 30-inch high concrete pin that

4.

was covered by a cone to ensure no one encroached on his flowerbed, and screwed several other cones to the asphalt path to ensure no one else used his driveway. James Ellis states that he installed the cones to ensure others would not suffer damaged by the large potholes that developed in the deteriorated asphalt roadway. The Marcums allegedly removed these cones with a back hoe.

{¶ 13} The Marcums began to complain about the additions to the retaining wall and new driveway because the changes ensured that two cars could no longer pass one another on the easement pathway and the Marcums had a difficult time getting their large trucks to the paved path on the easement from State Route 61 because it had been narrowed. The Ellises began to complain that increased traffic and the Marcums large trucks were eroding the asphalt paving on the easement and causing the retaining walls to deteriorate. The Ellises also believed that Bryan and Cynthia Marcum did not have a right to utilize the easement, and that the original easement was filed incorrectly with the recorder's office.

{¶ 14} After these disputes, the Marcums conducted a survey of the land which determined that the Ellises' garage, extension of the retaining wall, and driveway were encroaching on the easement. The Ellises obtained their own survey which reached the same conclusion.

### C. The Trial Court's Summary Judgment Decision

{¶ 15} The Marcums filed a motion for summary judgment asking the trial court to issue an injunction for the removal of the portion of the garage, driveway, and

5.

retaining wall which encroach on the easement area. The Marcums argued they were entitled to an injunction because the removal of the items which are encroaching the easement would not cause undue hardship to the Ellises, that the Ellises were trespassing on the easement, and the Ellises unreasonably interfered with the Marcums' use and enjoyment of the easement.

{¶ 16} The Ellises filed their own motion for summary judgment arguing that any rights to the disputed area of the easement that the Marcums claimed were terminated by prescription or adverse possession. The Ellises argue that they adversely possessed the area of the easement where the retaining wall, garage, and driveway lie.

{¶ 17} The trial court granted the parties' motions in part, and denied them in part. The trial court found that the garage encroached onto the easement, but that the encroachment was minimal. The trial court found it would be unduly burdensome to require the Ellises to remove the garage due to such a minor encroachment. Moreover, the trial court found that the Ellises had adversely possessed the portion of the garage and the area described as the small triangle of the concrete drive protruding into the easement.

{¶ 18} The trial court found the Ellises had not adversely possessed the retaining wall because the Marcums rely on the support of the wall when they utilize the asphalt path. It found that the Ellises did not exclusively use the retaining wall because of this needed support. However, the trial court found that the Ellises' improvement and first extension of the retaining wall did not change its function in any sense and therefore found that the original length, and the first extension of the retaining wall was not

6.

adversely possessed by Ellises. The court observed that the retaining wall supported the use of the road, and that its initial construction and its first extension, did not adversely impact the Marcums and other easement grantees and rather furthered their interest in the easement.

{¶ 19} As to the second extension of the wall and the addition of the catch basin, the trial court found that these items constituted a trespass on the easement and may be removed if a majority of the easement grantees agreed to have them removed, and that the Ellises would be responsible for the costs of removal.

{¶ 20} The trial court also found that a portion of the driveway and the resulting change in grade also trespassed on the easement and required the Ellises to return the driveway to its original grade. The trial court required a 20-foot wide entrance to the easement be available for use for ingress or egress and that area be maintained by the Marcums. A portion of the driveway which formed a triangle from the garage to the retaining wall was found to be adversely possessed by the Ellises. The trial court found for the Ellises on their counterclaim with respect to the maintenance obligation of the easement. The court found that the Marcums were responsible for maintenance of the pathway under the terms of the easement and required the Marcums to resurface the roadway and return the 16-foot asphalt path to its original condition.

### Assignment of Error

{¶ 21} The Marcums' assignment of error provides for our review:

7.

The trial court erred in ruling that certain portions of Appellants' easement have been extinguished by adverse possession.

{¶ 22} In support of this assignment of error, the Marcums state they are specifically arguing the trial court erred in ruling that the Ellises adversely possessed the easements encroachments of the garage and the small triangular portion of driveway. The Marcums also state "[f]urther, the trial court erred when it determined that when the easement was expanded from 16-feet to 20-feet that it was meant to include the concrete wall, and that the concrete wall is not an encroachment on the expanded easement." These two arguments will be addressed with respect to the Marcums' assignment of error.[2]

**Law**

{¶ 23} An appellate court reviews a trial court's summary judgment decision de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment will be granted when no genuine issues of material fact exist when after, construing all the evidence in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). *Accord Lopez v. Home Depot, USA, Inc.*, 6th Dist. Lucas No. L-02-1248, 2003-Ohio-2132, ¶ 7. When a properly supported motion for summary judgment is made, an

---

[2] The Marcums have not appealed the trial court's finding that they are responsible for the maintenance costs of the easement and the trial court's order requiring the easement grantees to return the asphalt path to its original condition.

8.

adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984).

**Analysis**

**1. Under the law of adverse possession, the Ellises could adversely possess a portion of the easement without the necessity of taking adverse possession over the entire easement.**

{¶ 24} The Marcums first argue, with little support, that the Ellises are required to obtain the entirety of the easement by adverse possession, rather than only a portion of the easement. We find this argument unavailing. First, in order to adversely possess another's land, a claimant must have actual possession of the land. *Richardson v. Blersch*, 1st Dist. No. C-930042, 1994 WL 114301 (Apr. 6, 1994), citing *Humphries v. Huffman*, 33 Ohio St. 395 (1878), paragraph five of the syllabus. "The actual possession of a small portion of contested land cannot be used to claim ownership in the entire parcel." *Id*., citing *Kelley v. Armstrong*, 102 Ohio St. 478, 132 N.E.15 (1921). Here, for example, the Ellises only claim to adversely possess a portion of the easement that they have actual possession of and have built items upon, and they could not claim any other area of the easement.

{¶ 25} The Marcums point to *Ohio Edison Co. v. Wilkes*, 7th Dist. Mahoning No. 10 MA 174, 2012-Ohio-2718, in support of their argument that the Ellises must obtain the entire easement or none at all. That case surrounded a matter where an electric company had an easement over a landowner's property. The landowner installed items

9.

on the easement and refused to remove those items. The electric company then sought removal of the items.

{¶ 26} Specifically, the court examined whether certain maintenance rights of the easement had been extinguished, not whether a party adversely possessed a portion of an easement. The court found that the electric company was entitled to remove the encroaching items on the easement granted to them.

{¶ 27} Of particular note in *Wilkes*, in permitting Ohio Edison to remove the items which violated the easement, the court observed that "[a]s Ohio Edison notes, the twenty-one year period [for adverse possession] *has not elapsed * * *." Id.* at ¶ 52. (Emphasis added.)

{¶ 28} Accordingly, the *Wilkes* decision was based upon an entirely different set of facts and issues of law where it was undisputed that the 21-year adverse possession period had not been established. Therefore, we find no support in *Wilkes* and reject the Marcums' arguments that the Ellises could not take adverse possession of a portion of the easement.

**2. The Ellises established the elements of adverse possession and took adverse possession of the garage overhang, and the "small triangular" portion of the driveway, which encroached upon the easement.**

{¶ 29} "It is well established in Ohio that to succeed in acquiring title via adverse possession, a claimant must show exclusive possession that is open, notorious, continuous, and adverse for at least 21 years." *Korenko v. Kelleys Island Park Dev. Co.*,

6th Dist. Erie No. E-09-020, 2010-Ohio-572, ¶ 25, citing *Evanich v. Bridge*, 119 Ohio St.3d 260, 2008-Ohio-3820, 893 N.E.2d 481.

{¶ 30} An easement may be extinguished by adverse possession. *Harvest Land Co-Op, Inc. v. Sandlin*, 12th Dist. Butler No. CA2005-08-360, 2006-Ohio-4207, ¶ 16. "This occurs where a servient estate holder adversely possesses an express easement by openly, exclusively, notoriously, and continuously using the easement in a manner inconsistent with its use by the dominant estate holder for a period of at least 21 years." (Citations omitted). *Id*.

{¶ 31} Possession of another's property must be "visible and open to the common observer of the property so that the owner or his agent, on visiting the premises, might readily see that the owner's rights are being invaded." *Franck v. Young's Suburban Estates, Inc.*, 6th Dist. Ottawa No. OT-02-040, 2004-Ohio-1650, ¶ 20, citing *Kaufman v. Giesken Ents. Ltd.*, 3d Dist. Putnam No. 12-02-04, 2003-Ohio-1027, ¶ 31. "In Ohio, building a permanent structure on another's land without permission is sufficient to constitute adverse possession of the part of the land encroached upon after 21 years." *Id*. at ¶ 21.

{¶ 32} To be open and notorious, another's use of the land must be capable of giving the owner notice of the use. *Hardert v. Neumann*, 4th Dist. Adams No. 13CA977, 2014-Ohio-1770, ¶ 13, citing *Dunn v. Ransom*, 4th Dist. Pike No. 10CA806, 2011-Ohio-4253, ¶ 78. For possession to be considered "open," the property must be used without attempts to conceal the use. *Id*. To be "notorious," the use must be "'known to some who

11.

might reasonably be expected to communicate their knowledge to the owner if he maintained a reasonable degree of supervision.'" *Id*., quoting *Dunn* at ¶ 78. "'In other words, the use of the property must be so patent that the true owner of the property could not be deceived as to the property's use.'" *Id*., quoting *Hindall v. Martinez*, 69 Ohio App.3d 580, 583, 591 N.E.2d 308 (3d Dist.1990).

{¶ 33} The Marcums argue that the overhang of the garage, which overhangs the easement by about one foot is not open because the encroachment is so minor that they could not readily see that their rights were being invaded. The Marcums also now claim that it was out of neighborly accommodation that they did not complain about the garage when it was built more than 30 years ago.

{¶ 34} There is no indication that any permission was given by the Marcums to the Ellises to build the garage in its current location. Mere acquiescence to the construction of the garage is insufficient to be deemed permission to build the garage for purposes of determining the open and notorious elements of adverse possession. There is undisputed evidence that the Ellises possessed the property and treated it as their own for 21 years. As such, the Ellises have adversely held the garage as well.

{¶ 35} Moreover, the Marcums testified at deposition that they believed that when the garage was built it may have encroached on their easement. So, from the start, they were under notice that the garage may have encroached on their easement, and took no action within the prescribed 21-year period. Further, the garage overhang, however minor to the Marcums, was open and visible to them. *See Crown Credit Co., Ltd. v.*

12.

*Bushman*, 170 Ohio App.3d 807, 2007-Ohio-1230, 869 N.E.2d 83, ¶ 47 (3d Dist.). The Ellises did not attempt to conceal the garage or the overhang. Merely because the Marcums allege they were not aware of the property line for the easement does not negate the open or notorious nature of the garage and the fact it encroaches on the easement.

{¶ 36} As to the triangular portion of the driveway that reaches from the eastern edge of the garage to the first extension of the retaining wall, this area of the driveway has been exclusively used by the Ellises since it was constructed in the early 1990s. Mere allowance of the Reinecks to use the driveway from time to time does not negate this exclusivity as the Reinecks were given limited permission by the Ellises to use the driveway, much as an owner of the area would do.

{¶ 37} The Marcums also argue that the Ellises have not possessed the driveway continuously for the requisite period because they replaced the driveway in 2014.

{¶ 38} "In order for use to be continuous, there must not be substantial interruption, 'with daily or weekly use generally not being required as long as the use is continuous enough to indicate prolonged and substantial use.'" *Bullion v. Gahm*, 164 Ohio App.3d 344, 2005-Ohio-5966, 842 N.E.2d 540, ¶ 20 (4th Dist.), quoting A*ult v. Prairie Farmers Co-Operative Co.*, 6th Dist. Wood No. WD-81-21, 1981 WL 5788 (Sept. 25, 1981).

{¶ 39} We do not find that the mere replacement of a driveway in the same area that it originally stood constitutes a substantial interruption. The driveway was out of use

13.

only for the amount of time it took to replace the driveway. *See Bullion, supra* (finding a four-month interruption did not constitute a substantial interruption). The only difference between the driveway installed in 2014 and the original driveway was a difference in grading that was formed between the driveway and the asphalt path. No change occurred in the triangular shaped area between the garage and the retaining wall, and the Ellises continued to utilize the area after the installation occurred. The Ellises were still using the driveway area when they were in the process of replacing it. Therefore, we find that there are no genuine issues of material fact that the triangular shaped area of the driveway has been continuously used by appellees for 21 years.

{¶ 40} We also find that because the garage has been in use since approximately 1990, and it therefore meets the requirement for 21 years. The garage has been continuously used by appellees as their primary garage for their property for the life of the garage. There are no genuine issues of material facts about whether these elements of adverse possession have been met by the construction of the garage.

{¶ 41} Accordingly, the court finds that viewing the evidence in a light most favorably to the Marcums, there is no genuine issue of material fact and the trial court did not err in finding that the Ellises acquired the land of these two easement encroachments by adverse possession.[3]

---

[3] The Marcums argue that they never abandoned the easement. Because we found that portions of the easement have been terminated by adverse possession, we will not determine if those same areas were terminated by abandonment of the easement.

14.

### 3. The trial court did not err in determining the scope and extent of the easement.

{¶ 42} In their second argument, the Marcums argue that the trial court erred when it determined that the easement was expanded from 16 feet to 20 feet, that it was meant to include the concrete retaining wall, and that the concrete retaining wall is not an encroachment on the expanded easement.

{¶ 43} It is undisputed that the easement was deeded by Liebhart to the Marcums a second time in 1969, and that the easement was properly recorded. The terms of the 1969 easement were different from the 1966 easement. It expanded the easement an additional four feet to a 20-foot easement *and* shifted the maintenance costs from the grantor and grantee, who had shared easement maintenance costs under the original easement, to *only* those grantees/owners relying on the easement.

{¶ 44} When a dispute arises over the scope and extent of an easement, the primary purpose in construing the interest is to ascertain the intent of the parties. *Murray v. Lyon*, 95 Ohio App.3d 215, 219, 642 N.E.2d 41 (9th Dist.1994). Generally, this will be accomplished by looking at the text of the easement, and if the intent is plain on the face of the instrument, then it is not necessary or permissible to resort to rules of construction or parole evidence to determine the easement's effect. *Id.,* citing *Columbia Gas Transm. Corp. v. Bennett*, 71 Ohio App.3d 307, 318, 594 N.E.2d 1 (2d Dist.1990). In other words, if an easement is clear and unambiguous, then its interpretation is a matter of law,

15.

and there are no issues of fact to be determined. *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.*, 15 Ohio St.3d 321, 322, 474 N.E.2d 271 (1984).

{¶ 45} Upon review, we find that the 1969 easement, which extended the easement from 16 feet to 20 feet, is clear and unambiguous. The trial court properly determined the extent and scope of the easement, and determined as a matter of law that the 1969 easement increased the 1966 original easement by four feet from 16 feet to 20 feet.

{¶ 46} The Marcums also claim the original construction (1966) of the retaining wall, and the first extension of the retaining wall by the Ellises, encroached upon the easement. The Marcums argue that this area has not been exclusively used by the Ellises since construction, and therefore cannot be subject to a finding of adverse possession.

{¶ 47} However, the trial court never found that the Ellises adversely possessed the retaining wall in the easement. Instead, the trial court found that the original construction of the wall, and the first extension of the retaining wall by the Ellises, actually supported the roadway's use on the easement for ingress and egress. Thus, the trial court concluded the original construction and first extension of the retaining wall, was not a wrongful encroachment of the easement, supported the easement, and did not adversely impact the grantees' (the Marcums) use of the easement.[4]

---

[4] We note that the trial court found, unlike the first extension, the Ellises' second extension of the retaining wall constituted an encroachment upon the easement and ordered that the encroachment be remedied and returned to its original condition, upon majority vote of the easement grantees, which included the Marcums.

{¶ 48} Based upon our review, we find that the trial court did not err in determining the scope and extent of an easement, finding that the easement was increased from 16 feet to 20 feet, and the 1966 construction of, and the Ellises' first extension of, the concrete retaining wall supported the easement, the ingress and egress on the roadway located on the easement, and was not an encroachment of the easement adverse to the Marcums and other grantees.

{¶ 49} The Marcums' two arguments are found not-well taken, and their assignment of error is found not well-taken.

## Conclusion

{¶ 50} We find the Marcums' assignment of error is not well-taken and affirm the April 17, 2019 judgment of the Huron County Court of Common Pleas. Pursuant to App.R. 24, appellants are ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Arlene Singer, J.

_____
JUDGE

Gene A. Zmuda, P.J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.