[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *NC Ents., L.L.C. v. Norfolk & W. Ry. Co.*, Slip Opinion No. 2026-Ohio-1429.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-1429

NC ENTERPRISES, L.L.C., APPELLEE, *v.* NORFOLK AND WESTERN RAILWAY COMPANY; NORFOLK SOUTHERN RAILWAY COMPANY, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *NC Ents., L.L.C. v. Norfolk & W. Ry. Co.*, Slip Opinion No. 2026-Ohio-1429.]

*Real property—Adverse possession—An open-and-notorious use of parcels of land must be obvious and apparent enough to hold a title owner accountable for knowing that an adverse possessor is using the parcels—Appellee failed to establish that its possession of appellant's parcels was open and notorious for the required 21-year period—Appellee's lawn maintenance on appellant's parcels was not sufficiently open and notorious to have put appellant on notice that appellee was adversely possessing and using the parcels—Court of appeals' judgment affirming trial court's judgment granting summary judgment in favor of appellee reversed and cause remanded to trial court.*

(No. 2024-0776—Submitted May 14, 2025—Decided April 24, 2026.)

APPEAL from the Court of Appeals for Summit County,
No. 30652, 2024-Ohio-1454.

_____

HAWKINS, J., authored the opinion of the court, which KENNEDY, C.J., and DEWINE, DETERS, and SHANAHAN, JJ., joined. FISCHER, J., dissented. BRUNNER, J., dissented, with an opinion.

**HAWKINS, J.**

{¶ 1} Appellee, NC Enterprises, L.L.C., filed a complaint claiming two parcels of land by adverse possession. The trial court granted summary judgment on NC Enterprises' adverse-possession claim, and the Ninth District Court of Appeals affirmed. We reverse the Ninth District's judgment because even if NC Enterprises could establish all other elements of adverse possession, it failed to establish that its possession of the parcels was open and notorious for the required 21-year period.

**Background**

{¶ 2} Appellant, Norfolk Southern Railway Company ("Norfolk Railway"), is title owner of three parcels of land in Tallmadge, two of which are it issue in this case. Combined, those two parcels comprise just under 1.5 acres. The two parcels are long and narrow, abut the larger 34.2-acre parcel owned by Norfolk Railway on one end and Munroe Falls Road on the other end, and abut property owned by NC Enterprises along almost their entire combined length.

{¶ 3} Approximately four months after NC Enterprises purchased its property in December 1997, it started regular and significant landscape maintenance on its property and the two parcels by hiring independent contractors to perform tasks like mowing; weeding; fertilizing; trimming bushes, shrubs, and trees; edging; mulching; planting; and providing spring and winter cleanups. NC Enterprises continued hiring independent contractors to perform these tasks on its

property and the parcels through 2021. NC Enterprises did not perform nonlandscape work on the parcels until September 2000, when it erected a fence along the road to deter theft. Thereafter, it erected a six-foot-tall chain-link fence with three strands of barbed wire in 2003 and installed drainage pipes on both its property and the parcels in 2011 to alleviate flooding. NC Enterprises always believed that it owned the parcels, right up until Norfolk Railway posted for-sale signs for them in 2021.

{¶ 4} Norfolk Railway paid property taxes on the two parcels throughout the period that NC Enterprises claims that it adversely possessed them. Some trees that were removed from the parcels during this period were not removed by NC Enterprises. And Norfolk Railway listed the parcels for sale at various times between 2003 and 2020, though whether for-sale signs were placed on them during this period is unclear.

{¶ 5} In a letter dated July 2, 2020, counsel for NC Enterprises notified Norfolk Railway that NC Enterprises was asserting an adverse-possession claim for the two parcels. On July 22, 2020, counsel for Norfolk Railway replied, stating that Norfolk Railway was refuting that claim.

{¶ 6} In August 2021, NC Enterprises filed a complaint against Norfolk Railway, seeking a declaratory judgment that NC Enterprises had adversely possessed the two parcels, a quieting of title to the parcels, and damages for unjust enrichment. In August 2022, NC Enterprises filed a motion for summary judgment, asserting that it was entitled to judgment as a matter of law based on evidence of the landscape maintenance on the parcels, the erection of the chain-link fence, and the installation of the drainage pipes. Norfolk Railway opposed the motion and filed a cross motion for summary judgment, arguing that NC Enterprises' acts on the parcels were insufficient to establish adverse possession for the required 21-year period.

{¶ 7} The trial court granted NC Enterprises' motion for summary judgment, concluding that NC Enterprises "ha[d] proven by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse use of the parcels at issue for a period of at least 21 years." Summit C.P. No. CV-2021-08-2641, 7 (Mar. 16, 2023). The trial court did not rule on NC Enterprises' unjust-enrichment claim. Norfolk Railway appealed, and the court of appeals affirmed, stating that Norfolk Railway had "provided no evidence to refute [NC Enterprises'] clear and convincing evidence that it openly, exclusively, notoriously, adversely, and continuously used and possessed [the two parcels] for over 21-years." 2024-Ohio-1454, ¶ 34 (9th Dist.). The court of appeals concluded that landscaping and maintenance may be combined with other acts to establish adverse possession, relying on several cases from various courts of appeals. *Id.* at ¶ 28-33. The court of appeals did not address NC Enterprises' unjust-enrichment claim.

{¶ 8} Norfolk Railway appealed to this court, and we accepted jurisdiction over three propositions of law:

> Proposition of Law No. 1: Lawn maintenance, in and of itself, is insufficient as a matter of law to establish adverse possession.
>
> Proposition of Law No. 2: If lawn maintenance is legally insufficient on its own, the statute of limitations on an adverse possessor's claim cannot even begin to run until it engages in a legally sufficient use.
>
> Proposition of Law No. 3: Lawn maintenance can only be considered relevant evidence to support continuous use when a structure or change to the land apart from maintenance has existed for twenty-one years.

*See* 2024-Ohio-3096.

## Analysis

### *The law of summary judgment*

{¶ 9} "Summary judgment is appropriate when an examination of all relevant materials filed in the action reveals that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Smith v. McBride*, 2011-Ohio-4674, ¶ 12, quoting Civ.R. 56(C). Summary judgment shall not be granted unless it appears from the evidence "that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made." Civ.R. 56(C). This court reviews a decision granting summary judgment de novo. *State ex rel. Parker v. Russo*, 2019-Ohio-4420, ¶ 5.

### *The law of adverse possession*

{¶ 10} "The very essence of an adverse possession is, that the holder of it claims the right to his possession, not under, but in opposition to the title to which his possession is alleged to be adverse." *Dietrick v. Noel*, 42 Ohio St.18, 21 (1884). In this case, NC Enterprises claims that it adversely possessed the two parcels such that it can now claim title to them against their owner, Norfolk Railway.

{¶ 11} "To acquire title by adverse possession, a party must prove, by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years." *Grace v. Koch*, 1998-Ohio-607, syllabus. "Failure of proof as to any of the elements results in failure to acquire title by adverse possession." *Id.* at ¶ 10, citing *Pennsylvania RR. Co. v. Donovan*, 111 Ohio St. 341, 349-350 (1924). We have also emphasized that adverse possession is disfavored and that "the elements of adverse possession are stringent." *Id.* at ¶ 12.

{¶ 12} First, we note that Norfolk Railway opposed NC Enterprises' adverse-possession claim on July 22, 2020, when counsel for Norfolk Railway

provided notice that Norfolk Railway was refuting NC Enterprises' claim. Thus, the period of adverse possession must have started on or before July 22, 1999, which is 21 years earlier. *See* R.C. 2305.04.

{¶ 13} Second, to establish adverse possession, NC Enterprises need not have intended to take the two parcels but it must have intended to occupy and treat them as its own. *Evanich v. Bridge*, 2008-Ohio-3820, ¶ 12; *see also Yetzer v. Thoman*, 17 Ohio St. 130, 133 (1866), quoting *French v. Pearce*, 8 Conn. 439, 443 (1831) ("'it is the visible and adverse possession, with an intention to possess, that constitutes its adverse character' "); *Humphries v. Huffman*, 33 Ohio St. 395, 402 (1878) (intent to possess constitutes adversity, not the remote motives or purposes of the occupant). The evidence here suggests that NC Enterprises intended to occupy and treat the two parcels as its own.

{¶ 14} Third, we turn to the elements of adverse possession to determine whether NC Enterprises has established all of them by clear and convincing evidence. We conclude that whether it has established that it exclusively possessed and continuously and adversely used the parcels for 21 years is not relevant because, even if it did, NC Enterprises has failed to establish that it did so openly and notoriously for 21 years.

{¶ 15} The open-and-notorious standard has been part of Ohio caselaw for almost two centuries. In *Henrietta Twp. v. Brownhelm Twp.*, which addressed a "settlement," a predecessor concept of adverse possession, we stated that "[t]he residence must not only be continuous, it must also be open and notorious, and attended with such circumstances as to lead the authorities of the township in the exercise of proper vigilance, to the conclusion that there is an intention to gain a settlement" (emphasis deleted), 9 Ohio 76, 77 (1839). In *Williams v. Sprigg*, we provided the following explanation of open and notorious: "There must be something in the acts which accompany possession of property, in order to give constructive notice, which can be seen and understood—something that will induce

inquiry—that will naturally raise the question as to who may have rights there." 6 Ohio St. 585, 595 (1856).

{¶ 16} These early cases illustrate that there can be no ambiguity—the ostensible adverse use must be apparent, clearly indicating that possession of the land, if not ownership, is being asserted. An open-and-notorious use must enable the title landowner to have reason to know of the adverse use, though the landowner need not actually know. *See State ex rel. A.A.A. Invests. v. Columbus*, 17 Ohio St.3d 151, 153 (1985) ("Actual knowledge is not a necessary element of adverse possession.").

{¶ 17} Fences played a prominent role in many early cases, though the consideration of them varied. In *Lane v. Kennedy*, a "mere fence" was insufficient to manifest an intention to permanently appropriate land, in part because it was "a worm fence and crooked at that." (Emphasis deleted.) 13 Ohio St. 42, 47 (1861). In *Clark v. Potter*, we noted that "'[i]t is well settled, that to constitute an adverse possession, there need not be a fence, building, or other improvements made.'" 32 Ohio St. 49, 63 (1876), quoting *Lessee of Ewing v. Burnet*, 36 U.S. 41, 52 (1837). Two years later, we stated that a party "must show a substantial inclosure [sic], an actual occupancy, . . . which is definite, positive, and notorious." *Humphries*, 33 Ohio St. at 403. A fence also features in this case because the erection of a fence was NC Enterprises' first open-and-notorious act of adverse possession that showed a substantial enclosure and an actual occupancy of the two parcels.

{¶ 18} Despite the seeming disparate consideration of fences, we have been consistent in our approach to open and notorious. In *Clark*, we stated: "The principle upon which the limitation operates, is, that the adverse claim is accompanied by such an invasion of the rights of the opposite party as to give him a cause of action, which he has failed to prosecute within the time limited by law, and which he is therefore presumed to have surrendered or abandoned." *Clark* at 63-64. We have also stated that "[t]he occupancy must be such as to give notice to

the real owner of the extent of the adverse claim," *Humphries* at 404, a statement we subsequently quoted in *Evanich*, 2008-Ohio-3820, at ¶ 8. Courts of appeals have also applied the same standard. *See, e.g.*, *Dunn v. Ransom*, 2011-Ohio-4253, ¶ 78 (4th Dist.) (open and notorious "requires that the actual use be of a character that is capable of giving the legal owner notice"); *Hardert v. Neumann*, 2014-Ohio-1770, ¶ 13 (4th Dist.), quoting *Dunn* at ¶ 78, quoting *Hindall v. Martinez*, 69 Ohio App.3d 580, 583 (3d Dist. 1990) (notorious use must be "'"known to some who might reasonably be expected to communicate their knowledge to the owner if he maintained a reasonable degree of supervision"'"); *Hindall* at 583 ("the use of the property must be so patent that the true owner of the property could not be deceived as to the property's use").

{¶ 19} Although we have not wavered in our open-and-notorious analysis, we have noted that it is "'difficult to lay down any precise rule, adapted to all cases'" (emphasis deleted), *Clark* at 63, quoting *Lessee of Ewing* at 53. This is because "'[s]o much depends on the nature and situation of the property, the uses to which it can be applied, or to which the owner or claimant may choose to apply it.'" (Emphasis deleted.) *Id.*, quoting *Lessee of Ewing* at 53. Nevertheless, "'it may safely be said, that where acts of ownership have been done upon land, which from their nature indicate a notorious claim of property in it, and are continued for twenty-one years, . . . such acts are evidence of an ouster of a former owner, and an actual adverse possession against him.'" (Emphasis deleted.) *Id.*, quoting *Lessee of Ewing* at 53.

{¶ 20} With this in mind, we have also identified scenarios that do not satisfy the open-and-notorious standard. We know that a "secret trespass" is not open and notorious. *Gill v. Fletcher*, 74 Ohio St. 295, 305 (1906), *superseded by statute on other grounds as stated in Peppertree Farms, L.L.C. v. Thonen*, 2022-Ohio-395, ¶ 17-21. We know that when the "occupation [is] under the surface," it is not open and notorious. *Elster v. Springfield*, 49 Ohio St. 82, 94 (1892). And we

know that when an adverse possessor merely "hangs out clothes [on the property] to dry after being washed," the use is not open and notorious. *Williams*, 6 Ohio St. at 594-595. An open-and-notorious use must be obvious and apparent enough to hold a title owner accountable for knowing that an adverse possessor is using the land.

*Applying the law to this case*

**{¶ 21}** There is no question that many of the acts engaged in by NC Enterprises, for example, erecting fences and installing drainage pipes, are characteristic of use and possession and were open and notorious as delineated in the above caselaw. But the real question is whether NC Enterprises engaged in open-and-notorious acts on the two parcels for 21 years. We hold that it did not.

**{¶ 22}** Before July 22, 1999, NC Enterprises' only adverse use of the two parcels was landscape maintenance. That use was not sufficiently open and notorious to have put Norfolk Railway on notice that NC Enterprises was adversely possessing and using the parcels. Nothing that occurred before the erection of the fence in September 2000 is akin to unfurling a "'flag on the land, and keep[ing] it flying so that the owner may see, if he will, that an enemy has invaded his dominions and planted his standard of conquest,'" *Grace*, 1998-Ohio-607, at ¶ 15, quoting *Darling v. Ennis*, 138 Vt. 311, 313 (1980).

**{¶ 23}** Moreover, it is not obvious that mowing grass and trimming bushes are adverse acts. No permanent structure (such as a fence) was built and used, and no improvement (such as installation of drainage pipes) was made and used, until September 2000, not quite 20 years before NC Enterprises notified Norfolk Railway of its adverse-possession claim. Our decision might be different in this case if, for example, a fence had been built by NC Enterprises on the two parcels on or before July 22, 1999, but NC Enterprises did not erect a fence on them until September 2000.

{¶ 24} The dissent finds it difficult to accept Norfolk Railway's claim that NC Enterprises' activities were not sufficiently open and notorious when Norfolk Railway "failed to oppose the *most* open and notorious activities," including the construction of the fence in September 2000 and the drainage work in 2011. (Emphasis in original.) Dissenting opinion, ¶ 36. But neither the construction of the fence nor the drainage work occurred before the date necessary to establish adverse possession under Ohio law. Any opposition, or lack thereof, on the part of Norfolk Railway to these activities is simply irrelevant.

{¶ 25} It is easy to say, as NC Enterprises claims, that Norfolk Railway should have paid closer attention to its two parcels. But the fact is that Norfolk Railway does not have to prove possession and use, because it is the owner of the parcels.

{¶ 26} NC Enterprises must prove by clear and convincing evidence that it adversely possessed the two parcels and did so openly and notoriously for 21 years, such that the world would know of its intention to possess them. *See Grace*, 1998-Ohio-607, at syllabus. Mowing grass and trimming bushes are not sufficient to notify the world that NC Enterprises had exercised dominion over the parcels. These types of lawn-maintenance activities are more in the nature of hanging laundry, *see Williams*, 6 Ohio St. at 594-595, than of unfurling a flag, *see Grace* at ¶ 15.

{¶ 27} The dissent suggests that our decision today creates a "bright-line rule" for lawn-maintenance activities in adverse-possession cases. Dissenting opinion at ¶ 37. But our decision does no such thing. Rather, we recognize that ordinary lawn-maintenance activities, such as mowing grass and trimming bushes, are simply not obvious enough to satisfy the open and notorious elements of an adverse-possession claim. Indeed, if we were to reject Norfolk Railway's first proposition of law and hold that lawn maintenance *is* sufficient to establish adverse

possession, such a decision would create a bright-line rule that the dissent would likely abhor.

{¶ 28} Reasonable minds can come to but one conclusion here: there is no clear and convincing evidence that the two parcels were adversely possessed continuously, openly, notoriously, and hostilely by NC Enterprises for 21 years. *See* Civ.R. 56(C). The court of appeals' judgment, which affirmed the trial court's judgment granting summary judgment in favor of NC Enterprises, is therefore reversed.

{¶ 29} With respect to Norfolk Railway's propositions of law, we conclude that lawn maintenance on a parcel of land is not open and notorious enough to sufficiently put the owner of the parcel on notice of an adverse use and that the required 21-year period for an adverse-possession claim cannot begin if the only "adverse" acts are lawn maintenance.

### Conclusion

{¶ 30} We reverse the judgment of the Ninth District Court of Appeals and remand this cause to the trial court with instructions for it to grant Norfolk Railway's motion for summary judgment as to NC Enterprises' claim for adverse possession and to consider NC Enterprises' claim for unjust enrichment, which has not yet been addressed.

Judgment reversed

and cause remanded to the trial court.

———————————

**BRUNNER, J., dissenting.**

{¶ 31} The majority opinion adopts the argument of appellant, Norfolk Southern Railway Company ("Norfolk Railway"), holding that "[m]owing grass and trimming bushes" can *never* be sufficiently open and notorious to put a property owner on notice that a would-be adverse possessor is taking over the property, majority opinion, ¶ 26. In creating this bright-line rule, the majority opinion takes

this court a step closer to becoming a "super fact-finder," thereby diminishing the importance of juries and expanding the court's jurisdiction beyond matters of public or great general interest to those in which the court engages in error correction, *see* Ohio Const., art. IV, § 2(B)(2)(e); *see also Acuity, A Mut. Ins. Co. v. Progressive Specialty Ins. Co.*, 2023-Ohio-3780, ¶ 32 (Brunner, J., dissenting) ("The more we engage in error correction, the less time and attention we can devote to issues that can be resolved only by this court."). I therefore dissent.

{¶ 32} When we review a summary-judgment decision, we apply a de novo standard of review and sit in the same position as the trial court. *See Smathers v. Glass*, 2022-Ohio-4595, ¶ 30. But if we reach a different conclusion about the facts than the trial and appellate courts did, that generally signifies that a genuine issue of material fact exists and that the evidence must be further examined at trial. *See id.* at ¶ 46. Instead of taking that prudent approach here, the majority opinion imbues this court with unwarranted fact-finding authority, a practice that should be discontinued. Unless there is truly a misapplication or misunderstanding of the law when applied to a case like this, we should not engage in deciding as a matter of law what reasonable minds may readily and naturally come to a different conclusion about.

{¶ 33} The majority opinion should have determined whether appellee NC Enterprises, L.L.C.'s lawn-maintenance activities at the property at issue were sufficiently open and notorious in light of all the facts presented *in this case* on summary judgment. At a minimum, the majority opinion lacks the restraint and sensibility to conclude that whether NC Enterprises' activities constituted open and notorious conduct was a genuine issue of material fact for consideration by the fact-finder at trial. Unfortunately, the unrestrained majority opinion instead announces a rule stating that lawn-maintenance activities, *as a matter of law*, can never constitute an adverse use for purposes of establishing an adverse-possession claim, deciding the issue for all time by ruling in favor of Norfolk Railway. *See* majority

12

opinion at ¶ 26.

{¶ 34} A unanimous panel of the Ninth District Court of Appeals concluded that NC Enterprises' activities were sufficiently open and notorious. 2024-Ohio-1454, ¶ 33 (9th Dist.). The trial court reached the same conclusion. Summit C.P. No. CV-2021-08-2641, 6 (Mar. 16, 2023). While I agree with the judgments of both the panel and the trial court, those judgments and this court's judgment arguably demonstrate that reasonable minds can come to more than one conclusion about NC Enterprises' lawn-maintenance activities.

{¶ 35} It is difficult to believe that a prudent owner of commercial property would not know that the property's lawn, trees, and vegetation were being maintained by another entity. If nothing else, an owner's bookkeeper or manager should notice that there are no expenditures for that type of lawn maintenance at the property. For the period at issue, i.e., beginning in April 1998 until NC Enterprises erected a fence in September 2000, *see* majority opinion at ¶ 3, 22, NC Enterprises presented evidence indicating that it paid an independent contractor to (1) mow the lawn of the property at issue several times each month from April 1998 through November 1998 and April 1999 through September 1999; (2) complete "ground maintenance" from May 2000 through August 2000; and (3) perform annual tree and shrub trimming, mulching, and end-of-the-year "cleanup." These activities constitute more than simple lawn maintenance. And although a would-be adverse possessor must establish that its possession of the property was sufficiently open and notorious, it need not show that the owner had actual knowledge of the adverse use. *See Vanasdal v. Brinker*, 27 Ohio App.3d 298, 299 (9th Dist. 1985). We must consider how a reasonable—not ignorant or absent—owner would have used the property during the applicable period. *See id.*

{¶ 36} It is even more difficult to accept that Norfolk Railway could claim that *some* of NC Enterprises' activities were not sufficiently open and notorious when Norfolk Railway failed to oppose the *most* open and notorious activities at

the property, such as the construction of the fence in September 2000 and the extensive drainage work completed in 2011. Viewing the facts in a light most favorable to Norfolk Railway, as we are required to do in determining whether NC Enterprises was entitled to summary judgment, *see* Civ.R. 56(C), at best, there exists a genuine issue of material fact that must be further examined at trial. Yet, incredibly, the majority opinion goes beyond denying NC Enterprises summary judgment and concludes that Norfolk Railway is entitled to summary judgment. *See* majority opinion at ¶ 30. But in viewing the facts in a light most favorable to NC Enterprises to determine whether Norfolk Railway was entitled to summary judgment, at best, there exists a genuine issue of material fact about whether NC Enterprises' activities before the construction of the fence in September 2000 were sufficiently open and notorious.

{¶ 37} The majority opinion strains to create a bright-line rule for lawn-maintenance activities in adverse-possession cases when the many and varied situations involving lawn maintenance and adverse possession do not lend themselves to following such a rule. By its very nature, an adverse-possession claim arising from lawn-maintenance activities is a jury question, plain and simple, because of the complexities and uniqueness of the individual situations in which those activities occur. Contrary to the majority opinion's presumption that this dissent would "abhor" a different bright-line rule regarding Norfolk Railway's first proposition of law than what is pointed out here, majority opinion at ¶ 27, the only bright-line rule that I wish to see is one that preserves the fact-finding role of the trial court.

{¶ 38} Accordingly, I would affirm the judgment of the Ninth District Court of Appeals, or at a minimum, reverse that court's judgment affirming the trial court's judgment granting summary judgment in favor of NC Enterprises and remand the case for a trial to determine whether NC Enterprises' lawn-maintenance activities at the property before September 2000 were sufficiently open and

notorious.  Because the court does neither, I dissent.

_____

Hanna Campbell & Powell, L.L.P., and Frank G. Mazgaj; and Ciccolini & Associates Co., L.P.A., Maria T. Ciccolini, and Michael E. Ciccolini, for appellee.

Eastman & Smith, Ltd., Matthew D. Harper, and Nicholas W. Bartlett, for appellant.

_____