[Cite as *Jeter v. Kruz 'N' Kleen, L.L.C.*, 2023-Ohio-4165.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Danielle Jeter

    Appellant

v.

Kruz 'N' Kleen, LLC, et al.

    Appellees

Court of Appeals No.  L-23-1070

Trial Court No.  CI0202101740

**<u>DECISION AND JUDGMENT</u>**

Decided:  November 17, 2023

* * * * *

Gregory S. Reichenbach, for appellant.

* * * * *

**SULEK, J.**

{¶ 1} In this accelerated appeal, appellant Danielle Jeter appeals the judgment of the Lucas County Court of Common Pleas, awarding her reasonable attorney fees and expenses in the amount of $8,004.63.  Because the trial court considered the appropriate factors and determined an award that was within the range of reasonableness, its decision is not an abuse of discretion.  Therefore, the trial court's judgment is affirmed.

## I. Factual Background and Procedural History

{¶ 2} In September 2020, Jeter purchased a vehicle from a car dealership known as Kruz 'N' Kleen.[1]  By November 2020, Jeter was behind on her payments and Kruz 'N' Kleen repossessed her vehicle.

{¶ 3} On April 7, 2021, Jeter initiated the present matter when she filed a complaint against Kruz 'N' Kleen, alleging a violation of the Consumer Sales Practices Act ("CSPA") and two violations of the Uniform Commercial Code ("UCC").  Jeter sought monetary and declaratory relief, as well as reasonable attorney fees provided under the CSPA.

{¶ 4} The trial court granted partial summary judgment in favor of Jeter and set the matter for a hearing on damages.  Following that hearing, the trial court found that Jeter suffered $6,149.00 in damages on her claim for violation of the CSPA.  Finding that damages must be trebled pursuant to R.C. 1345.09(B), the court ordered Kruz 'N' Kleen to pay $18,447.00.  The court further found that Jeter suffered $450.00 in damages on one of her claims for violation of the UCC.  Jeter voluntarily dismissed the other claim for violation of the UCC.  The trial court entered judgment accordingly on December 20, 2022.

---

[1] It was later discovered that Kruz 'N' Kleen was operated by appellee S.L.A.V.N., LLC. Also named as defendants, and appellees herein, were George Hicks and Darius Hicks who were agents of S.L.A.V.N., LLC, and who operated Kruz 'N' Kleen.  For ease of discussion, this decision will refer to appellees collectively as "Kruz 'N' Kleen."

2.

{¶ 5} On January 5, 2023, Jeter moved for an award of attorney fees and expenses pursuant to R.C. 1345.09(F)(2) of the CSPA. Jeter sought attorney fees for 49.1 hours at the rate of $475.00 per hour for a total of $23,322.50, as well as reasonable expenses of $644.63. Jeter supported her motion with reports showing the rate for consumer law attorneys in the Toledo area with 16-20 years of experience is $475.00 per hour. Kruz 'N' Kleen opposed the motion, and Jeter filed a reply in support.

{¶ 6} On March 3, 2023, the trial court entered its judgment granting Jeter's motion for attorney fees, but awarding only $7,360.00 plus expenses of $644.63. In reducing the award from the requested amount, the trial court engaged in a detailed analysis examining: (1) the time and labor involved in maintaining the litigation; (2) the novelty and difficulty of the questions involved; (3) the professional skill required to perform the necessary legal services; (4) the attorney's inability to accept other cases; (5) the fee customarily charged; (6) the amount involved and the results obtained; (7) any necessary time limitations; (8) the nature and length of the attorney/client relationship; (9) the experience, reputation, and ability of the attorney; and (10) whether the fee is fixed or contingent.

{¶ 7} Upon consideration of all of the factors, the trial court determined that an award of attorney fees at the rate of $475.00 per hour was not reasonable. Remarking that the matter was "a relatively simple case where an apparently uninformed small car dealership failed to give notices after repossessing the vehicle," the trial court stated that

3.

a fee in line with the hourly fee for an attorney in general practice was reasonable. Based on the Ohio State Bar Association fee survey submitted by Jeter, the trial court concluded that the reasonable rate was $200.00 per hour. Furthermore, the trial court determined that since Jeter dismissed one of her four claims, "a reasonable amount of time spent on this matter is three-fourths of the amount requested, or 36.8 hours." The trial court then reached the reasonable fee award of $7,360.00 by multiplying the $200.00 hourly rate by 36.8 hours.

## II. Assignment of Error

{¶ 8} Jeter has timely appealed the trial court's judgment and now asserts one assignment of error for review:

1. The trial court erred by awarding attorney fees at an average hourly rate for a general practice attorney in Ohio, and not taking into account the average rates in the geographical area where the case was litigated, for attorneys with a similar amount of experience handling consumer cases.

## III. Analysis

{¶ 9} At the outset, Jeter expressly does not challenge the trial court's reduction of the requested hours. Thus, this analysis will focus solely on the hourly rate of compensation.

4.

**{¶ 10}** Jeter acknowledges that attorney-fee awards under the CSPA are generally reviewed for an abuse of discretion.

> It is well settled that where a court is empowered to award attorney fees by statute, the amount of such fees is within the sound discretion of the trial court. Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere. The trial judge which participated not only in the trial but also in many of the preliminary proceedings leading up to the trial has an infinitely better opportunity to determine the value of services rendered by lawyers who have tried a case before him than does an appellate court.

*Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146, 569 N.E.2d 464 (1991), quoting *Brooks v. Hurst Buick-Pontiac-Olds-GMC, Inc.*, 23 Ohio App.3d 85, 91, 491 N.E.2d 345 (12th Dist.1985).

**{¶ 11}** An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court." *In re Trust of Tary v. Seiple*, 2022-Ohio-3773, 199 N.E.3d 230, ¶ 21 (6th Dist.), quoting *In re Jane Doe 1*, 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991).

5.

{¶ 12} Jeter first contends that the trial court abused its discretion because it used the old procedure for determining attorney fees under *Bittner*, rather than the new procedure under *Phoenix Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.*, 160 Ohio St.3d 32, 2020-Ohio-1056, 153 N.E.3d 30.

{¶ 13} In *Bittner*, the Ohio Supreme Court held that "[w]hen awarding reasonable attorney fees pursuant to R.C. 1345.09(F)(2), the trial court should first calculate the number of hours reasonably expended on the case times an hourly fee, and then modify that calculation by application of the factors listed in [Prof.Cond.R. 1.5(a)]."[2] *Bittner* at syllabus. Those factors include:

> the time and labor involved in maintaining the litigation; the novelty and difficulty of the questions involved; the professional skill required to perform the necessary legal services; the attorney's inability to accept other cases; the fee customarily charged; the amount involved and the results obtained; any necessary time limitations; the nature and length of the attorney/client relationship; the experience, reputation, and ability of the attorney; and whether the fee is fixed or contingent.

*Bittner* at 145-146.

{¶ 14} In that case, Bittner settled her CSPA claim for $3,500.00. She then sought attorney fees under R.C. 1345.09(F) in the amount of $10,200.00, plus expenses of

---

[2] *Bittner* referred to DR 2-106(B), which has been superseded by the substantially similar Prof.Cond.R. 1.5(a). *Phoenix Lighting* at ¶ 12.

6.

$811.98. After a hearing, the trial court awarded $7,615.00, plus expenses of $885.00. On direct appeal, the appellate court reversed, finding that the amount of attorney fees was unconscionably high when compared to the amount of the settlement. *Id.* at 143-144. The appellate court held that "one of the most important factors to consider when determining the reasonableness of a fee award is the relationship of the fee award to the amount recovered." *Id.* at 144.

{¶ 15} On further appeal, the Ohio Supreme Court rejected the appellate court's holding, reasoning that requiring a direct relationship between the attorney fees awarded and the amount of the judgment on the claim would frustrate the purpose of the CSPA. *Id.*

{¶ 16} The court then set forth the procedure for determining a proper fee award. The court stated, "[T]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Id.* at 145, quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The trial court should then adjust the fee upward or downward depending on application of the factors listed in Prof.Cond.R. 1.5(a). *Id.* at 145-146.

{¶ 17} In *Phoenix Lighting*, the Ohio Supreme Court revisited its holding in *Bittner*. Consistent with *Bittner*, the court stated that "[t]he beginning point for

7.

determining the award of attorney fees is the reasonable hourly rate multiplied by the number of hours worked, a calculation that is sometimes referred to as the 'lodestar.'" *Phoenix Lighting*, 160 Ohio St.3d 32, 2020-Ohio-1056, 153 N.E.3d 30, at ¶ 1. The Ohio Supreme Court then reaffirmed *Bittner* "to the extent that it held that a lodestar can be modified," but clarified "that the lodestar is presumptively reasonable and that enhancements to the lodestar should be rarely granted and allowed only when the prevailing party has presented evidence that enhancement is necessary to provide reasonable compensation, that is, if the lodestar does not take into consideration any factor that may be properly considered in determining a reasonable fee." *Id.* at ¶ 2.

{¶ 18} Phoenix Lighting was awarded approximately $5.3 million dollars in compensatory and punitive damages on its claims for tortious interference with a business relationship, misappropriating trade secrets, and civil conspiracy. Phoenix Lighting also sought an award of attorney fees. During the hearing on attorney fees, the trial court established a lodestar of approximately $2 million dollars, which "accurately represents the amount of attorney fees * * * that would have been charged to Phoenix under a standard hourly rate agreement." *Id.* at ¶ 6. The trial court then applied a multiplier of two to the lodestar based upon its determination that

> the case was "quite complex, both factually and legally," that the case took
> up so much of counsel's time that they were hindered "from accepting and
> pursuing other cases and clients," that Phoenix's attorneys "obtained a

8.

highly favorable outcome," that the hybrid hourly fee and contingent nature of the compensation "forced Phoenix's counsel to assume a great financial risk," and that all of the attorneys involved in this case were "of high caliber," were "highly experienced, and maintained excellent reputations." *Id.* at ¶ 6. On direct appeal, the Ninth District concluded that the trial court did not abuse its discretion in applying a multiplier of two to the lodestar. *Id.* at ¶ 7.

{¶ 19} On appeal to the Ohio Supreme Court, the court noted that its decisions on reasonable attorney fees "have been guided by decisions issued by the United States Supreme Court." *Id.* at ¶ 10. Since *Bittner*, the United States Supreme Court has "backed away from enhancements based on factors like those contained in Prof.Cond.R. 1.5(a)." *Id.* at ¶ 13. The court reasoned, "It is simple economics that an attorney charges an hourly rate that takes into account the difficulty of the question involved, the opportunity cost, the time limitations imposed by the client, the skill requisite to perform a legal service, the attorney's professional relationship with the client, and the fee customarily charged in the jurisdiction for similar legal services." *Id.* at ¶ 17. "'A reasonable hourly rate is the prevailing market rate in the relevant community * * * given the complexity of the issues and the experiences of the attorney * * *.'" (Internal citation omitted.) *Id.* at ¶ 11, quoting *State ex rel. Harris v. Rubino*, 156 Ohio St.3d 296, 2018-Ohio-5109, 126 N.E.3d 1068, ¶ 4. "Thus, the factors in Prof.Cond.R. 1.5(a), including the results obtained, are *subsumed* within the lodestar; they do not enhance the lodestar."

9.

(Emphasis added.) *Id.* at ¶ 17, citing *Blum v. Stenson*, 465 U.S. 886, 900, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). The Ohio Supreme Court held,

> [T]here is a strong presumption that the reasonable hourly rate multiplied by the number of hours worked, which is sometimes referred to as the "lodestar," is the proper amount for an attorney-fee award. Enhancements to the lodestar should be granted rarely and are appropriate when an attorney produces objective and specific evidence that an enhancement of the lodestar is necessary to account for a factor not already subsumed in the lodestar calculation.

*Id.* at ¶ 19.

{¶ 20} Applying its holding to the facts before it, the Ohio Supreme Court determined that the trial court's reasoning for enhancing the lodestar was based on factors that were subsumed within its determination of a reasonable rate in the lodestar calculation. Therefore, the Ohio Supreme Court concluded that there should have been no enhancement to the lodestar. *Id.* at ¶ 28.

{¶ 21} Turning to the present case, Jeter asserts that the trial court used the old procedure under *Bittner* by first calculating a lodestar and then adjusting that number downward. Jeter's assertion, however, is incorrect. Rather than determining a lodestar and then adjusting that number, the trial court's analysis focused on determining the reasonable hourly rate in the first instance. In so doing, the trial court considered the

10.

Prof.Cond.R. 1.5(a) factors and concluded that the reasonable hourly rate was $200.00. The court then used that hourly rate to determine the lodestar of $7,360.00. No further adjustments to the lodestar were made. Thus, the trial court used the correct procedure as set forth in *Phoenix Lighting*.

{¶ 22} Alternatively, Jeter argues that the trial court erred in concluding that the reasonable hourly rate was $200.00. In her brief, Jeter considers each of the factors in Prof.Cond.R. 1.5(a) and argues that they support a reasonable hourly rate of $475.00 consistent with the average rate for a consumer law attorney in Toledo, Ohio. Those factors will be discussed in turn.

{¶ 23} Under Prof.Cond.R. 1.5(a)(1), the factor to be considered is "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly." The trial court found that the matter "did not require any extraordinary efforts beyond what is otherwise required in a typical or ordinary case in Common Pleas" and it did not involve any "novel or unusual questions of law or fact." Further, the trial court found that the matter "did not require any extraordinary professional skill to perform the necessary legal services above those of an average competent attorney." Jeter, on the other hand, argues that the areas of commercial law involved in the case were complex, requiring an understanding of the interaction between the UCC, the retail installment sales act, and the CSPA, each of which can be difficult to navigate on their own. Jeter also argues that this case involved

11.

an unusual damages calculation, requiring a higher level of professional skill, and that counsel demonstrated his skill when he proved those damages using a defense witness and documents in the record after Jeter was unexpectedly absent at the hearing. Thus, Jeter suggests that this factor supports at least the average hourly rate for a consumer law attorney, not a reduction.

{¶ 24} Under Prof.Cond.R. 1.5(a)(2), the factor to be considered is "the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer." The trial court found that the matter did not involve any novel or unusual questions of law or fact. In addition, the court noted that counsel spent an average of 2.4 hours per month on this case over the 20 months from the filing of the complaint to judgment, which "should not have had a significant effect upon Plaintiff's counsel's ability to accept other cases." Jeter argues, however, that counsel has worked at full capacity since 2006 and that if he did not take this case, he likely would have accepted another one.

{¶ 25} Under Prof.Cond.R. 1.5(a)(3), the factor to be considered is "the fee customarily charged in the locality for similar legal services." The trial court found that the median hourly fee for all attorney specialty practice areas is $250.00 and the median hourly fee for general practice attorneys is $200.00. For consumer law attorneys, the median hourly rate is $475.00 in the Toledo area and $435.00 statewide. Jeter argues that

12.

the starting point for the trial court's calculations should have been the hourly rate for consumer law attorneys.

{¶ 26} Under Prof.Cond.R. 1.5(a)(4), the factor to be considered is "the amount involved and the results obtained." The trial court found that the actual damage amount was $6,149.00 and the mandatory treble damages awarded was $18,447.00. Jeter contends that this is a very favorable result supporting an increase in the hourly rate because she went from defaulting on her car contract and being liable for a deficiency to owing nothing on her contract and recovering damages of over $18,000.00.

{¶ 27} Under Prof.Cond.R. 1.5(a)(5), the factor to be considered is "the time limitations imposed by the client or by the circumstances." The trial court found that there were no extraordinary time limitations in the case. Jeter agrees and argues that this factor is neutral and does not justify a lower hourly rate.

{¶ 28} Under Prof.Cond.R. 1.5(a)(6), the factor to be considered is "the nature and length of the professional relationship with the client." The trial court found that this was the sole matter in which counsel represented Jeter. Again, Jeter agrees and argues that this factor is neutral and does not justify a lower hourly rate.

{¶ 29} Under Prof.Cond.R. 1.5(a)(7), the factor to be considered is "the experience, reputation, and ability of the lawyer or lawyers performing the services." The trial court found that it "ha[d] no reason to doubt" counsel's experience, good reputation, and ability in practicing consumer law. Given counsel's experience, good

13.

reputation, and ability, Jeter suggests that this factor supports a higher hourly rate, not a lower one.

{¶ 30} Finally, under Prof.Cond.R. 1.5(a)(8), the factor to be considered is "whether the fee is fixed or contingent." The trial court found that while the attorney fee agreement was not provided to the court, counsel's affidavit established that the fee was contingent upon success and upon the amount of attorney fees recovered under R.C. 1345.09(F). Jeter argues that this is the most significant factor because attorneys who are paid only if they win are at risk of not being paid at all and therefore are justified in receiving a higher rate.

{¶ 31} Examining all of the Prof.Cond.R. 1.5(a) factors, Jeter concludes that many of the factors support awarding a higher-than-average hourly rate for consumer law attorneys, not a rate that is less than 50 percent of the average. Thus, Jeter urges this court to find that the trial court's determination of a reasonable hourly rate of $200.00 is an abuse of discretion.

{¶ 32} Upon review, it cannot be said that the trial court's decision was unreasonable, arbitrary, or unconscionable. The trial court diligently considered each of the factors and gave particular weight to the simple nature of the case, noting that it involved an apparently uninformed small car dealership failing to give notices after repossessing a vehicle. Whether or not this court would have made a different decision, it is the trial judge who "has an infinitely better opportunity to determine the value of

14.

services rendered by lawyers who have tried a case before [her]." *Bittner* at 146, quoting

*Brooks v. Hurst Buick-Pontiac-Olds-GMC, Inc.*, 23 Ohio App.3d 85, 91, 491 N.E.2d 345

(12th Dist.1985). Because the trial court determined that the value counsel provided in

this case was commensurate with a general practice attorney, the $200.00 hourly rate was

within the range of reasonableness and not so low as to "shock the conscience" thereby

warranting this court's interference. *Id.*.

{¶ 33} Accordingly, we hold that the trial court's judgment is not an abuse of

discretion and Jeter's assignment of error is not well-taken.

## IV. Conclusion

{¶ 34} For the foregoing reasons, the judgment of the Lucas County Court of

Common Pleas is affirmed. Jeter is ordered to pay the costs of this appeal pursuant to

App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J. _____
                                    JUDGE
Myron C. Duhart, P.J.

Charles E. Sulek, J.                                  JUDGE
CONCUR.

                                    JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.